IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **KIM P.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 19-3201** |
| v. | * | |
| | * | |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Kim P. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 12).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 10) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**I**

**Background**

On August 14, 2018, Administrative Law Judge ("ALJ") Richard Furcolo held a hearing in Washington, D.C., where Plaintiff and a vocational expert ("VE") testified. R. at 40-76. The ALJ thereafter found on October 19, 2018, that Plaintiff was not disabled from her alleged onset date of disability of March 4, 2009, through the date last insured of December 31, 2016. R. at 19-39. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity from March 4, 2009, through December 31, 2016, and that her degenerative disc disease, dysfunction of major joints, and asthma were severe impairments. R. at 24-25. She did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 25-26.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps/stairs, ladders, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to pulmonary irritants." R. at 26.[2] In light of this RFC and the VE's testimony, the ALJ found that, through the date last insured, Plaintiff could perform her past relevant work as a director of operations, customer service supervisor, provider services representative, and human resources assistant. R. at 31-32. The ALJ thus found that Plaintiff was not disabled from March 4, 2009, through December 31, 2016. R. at 33.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on November 5, 2019, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production

3

and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

5

## III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ applied an improper standard in evaluating her subjective complaints. Pl.'s Mem. Supp. Mot. Summ. J. 18-19, ECF No. 10-1 (citing *Hines*, 453 F.3d at 563). According to Plaintiff, the ALJ erred in requiring her to provide objective evidence to substantiate the intensity, persistence, and limiting effects of her subjective complaints. *Id.* at 19. Plaintiff also argues that the ALJ erroneously assessed her RFC. *Id.* at 3-17. In doing so, she maintains that, among other things, the ALJ erroneously relied upon her daily activities to discount her credibility. *Id.* at 16-17. For the reasons discussed below, the Court remands this case for further proceedings.

The Court turns first to Plaintiff's assertion that the ALJ applied an improper standard in evaluating her pain. The Fourth Circuit recently reiterated the standard used by ALJs to evaluate a claimant's symptoms:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and [Social Security Ruling ("SSR")] 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them.

*Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (alteration in original) (citations omitted).[4]

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above-alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 27. "Accordingly, these statements have been found to affect [Plaintiff's] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." R. at 27. The ALJ "considered other factors in assessing [Plaintiff's] complaints of pain and other symptoms, and how those factors affect [her] ability to work." R. at 27.

> Where examination shows objective medical evidence of an underlying medical condition, it must be determined whether: (1) the objective evidence confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. The undersigned's interpretation of these guidelines is that the factors must be carefully considered, but that the claimant's allegations of pain and functional loss do not have to accepted at face value in every case. Any other interpretation would mean that the filing of the application and related procedural papers would be determinative in nearly every case.

R. at 27.

The ALJ here found that, "[a]lthough [Plaintiff] endorsed persistent pain and instability in the lower extremities, her physical examinations show she retains 5/5 muscle strength in

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

almost all lower extremities except for the right anterior tibialis at 4/5 muscle strength." R. at 29; *see* R. at 28.  As noted above, there does not need to be objective evidence of the claimant's pain itself or its intensity.  *Arakas*, 983 F.3d at 95.  Rather, the claimant is entitled to rely exclusively on subjective evidence to prove the second part of the test above.  *Id.*  In other words, "disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms."  *Id.* at 98.  "Thus, [the ALJ] 'improperly increased [Plaintiff's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence."  *Id.* at 96 (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)).

The ALJ also discredited Plaintiff's subjective complaints as inconsistent with her daily activities, "including her ability to perform light chores, attend church regularly, maintain her personal care/grooming, go to the movies and dinner, travel abroad, and shop in stores."  R. at 31.  "A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities," however.  *Arakas*, 983 F.3d at 101.  Thus, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them."  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).  Plaintiff only dusted and washed some laundry, and it took her a long time to perform chores because of pain.  R. at 220.  She went to church only three to four times a week.  R. at 225.  She shopped in stores for no more than thirty minutes at a time.  R. at 225.  The ALJ "did not acknowledge the limited extent of those activities as described by [Plaintiff and her husband] or explain how those activities showed that [she] could sustain a full-time job."  *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017); *see Arakas*, 983 F.3d at 100. The Court remands this case to afford the ALJ the opportunity to do so.

The ALJ further gave little weight to the opinions of Plaintiff's treating sources. R. at 29-31. In doing so, the ALJ repeatedly stated that the opinions merely offer "an assessment of her condition over a brief period of time, rather than characteristic of [Plaintiff's] functioning over sustained periods." R. at 29, 30. "[T]he opinion is not accompanied by function-by-function assessments of [Plaintiff's] abilities to perform work related functions." R. at 29, 30. The ALJ also found that these opinions were inconsistent with findings from Plaintiff's physical examinations of 5/5 muscle strength in the lower extremities. R. at 29, 30-31.

> For claims—like [Plaintiff's]—filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

*Brown*, 873 F.3d at 255 (citations omitted).

> Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (alterations in original) (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2)(i)-(6). While "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385.

Here, the ALJ stated that he had considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. R. at 26. It does not appear, however, that the ALJ meaningfully considered each of the § 404.1527(c) factors before deciding how much weight to give the opinions of Plaintiff's treating sources. *See Dowling*, 986 F.3d at 385; *Arakas*, 983 F.3d at 107 n.16. Although it seems that the ALJ considered the consistency of the opinions with the record as a whole and arguably also their supportability, the ALJ apparently considered neither the nature and length of the treatment relationships nor the treating sources' specializations. Remand is thus warranted under *Dowling* as well.

In considering the opinion evidence in the record, the ALJ also gave great weight to the opinions of the state agency consultants because they were "generally consistent with [Plaintiff's] retained activities of daily living" and "consistent with examination findings." R. at 31. An ALJ may

> credit the opinion of a non-treating, non-examining source where that opinion has sufficient indicia of "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion."

*Woods*, 888 F.3d at 695 (quoting *Brown*, 873 F.3d at 268). On remand, the ALJ should consider the consultants' specializations and their opinions' supportability and consistency with the record

as a whole. *See id.* ("[The state agency's consultant] concluded that [the claimant] could lift up to 50 pounds (something none of her treating physicians believed she was capable of), but failed to explain how he arrived at that specific number. The same is true of his conclusion that [the claimant] can sit or stand for six hours in an eight-hour workday. As the ALJ himself acknowledged, these conclusions conflict with the opinions of [the claimant's consultative examiner, treating rheumatologist, and primary care physician], and with [the claimant's] own testimony. Nor is there any evidence in the record that [the state agency's consultant] is a specialist and therefore due additional deference.").

In sum, the ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Id.* at 694 (alteration in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). An ALJ's failure to do so constitutes reversible error. *Lewis*, 858 F.3d at 868. Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further proceedings on this ground as well. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods*, 888 F.3d at 694).

Because the Court remands this case on other grounds, the Court need not address Plaintiff's remaining arguments. In any event, the ALJ also should address these other issues raised by Plaintiff. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues.").

## V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 12) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 10) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: March 18, 2021                                /s/
                                             Thomas M. DiGirolamo
                                             United States Magistrate Judge